IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RANDY W. WILLIAMS | § | |
|     TDCJ-CID # 401747 | § | |
| v. | § | C.A. NO. C-13-061 |
| | § | |
| RICK THALER | § | |

## OPINION AND ORDER OF DISMISSAL

This lawsuit is a civil rights action filed by a Texas state prisoner pursuant to 42 U.S.C. § 1983.

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, 10 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee, or proceeds as a pauper. Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam) (citations omitted). Plaintiff's *pro se* complaint must be read indulgently, see Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible. Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

Applying these standards, plaintiff's claims alleging that defendants violated his First Amendment rights by failing to dispose of certain documentation as requested by plaintiff are dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A(b)(1).

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. Upon consent of the plaintiff, (D.E. 9), this case was referred to the undersigned United States magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 13); see also 28 U.S.C. § 636(c).

## II. FACTUAL ALLEGATIONS

Plaintiff is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), and is currently confined at the McConnell Unit in Beeville, Texas.[1] He filed his original complaint on March 6, 2013, alleging that defendants violated his First Amendment rights by refusing to let him dispose of certain documents and papers that he had received via the mail without incident at the McConnell Unit, but had subsequently been seized. Plaintiff requested that defendants deliver the documents and papers to his mother, but defendants have refused to do so based on their determination that the "information was used for fraudulent schemes."

A Spears[2] hearing was held on April 3, 2013. During this hearing, in response to the question of who he sought to sue regarding the claims he raised, plaintiff named as defendants: (1) Rick Thaler, TDCJ-CID Director; and (2) Ms. Keisha A. Collins, Administrative Assistant III

---

[1] Plaintiff is serving a life sentence for aggravated kidnaping and aggravated sexual assault. See generally Williams v. State, 851 S.W.2d 282 (Tex Crim. App. 1993) (en banc). He was previously represented by the Innocence Project and it was discovered that, despite the trial court's order to the contrary, DNA evidence from the victim of the sexual assault was destroyed. See Williams v. Johnson, No. C-98-7 (S.D. Tex. Sept. 9, 1998) (memorandum and recommendation, at 4-6), discussing procedural background of plaintiff's post-conviction efforts. See id. at 10 n.2. There is no question that certain evidence in plaintiff's criminal proceeding was wrongly destroyed, thus hindering his efforts to prove his innocence. However, the documents plaintiff seeks to dispose of in this instant action do not relate to his innocence or criminal conviction, and he has no constitutional right to direct their disposition or disposal.

[2] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

and mailroom supervisor. The following allegations were made in plaintiff's original complaint, (D.E. 1, 6), or at the hearing:

Plaintiff has served over 28 years on his life sentence. During this time, he has received through the mail certain documentation and writings. Some of this information is related to his personal finances and establishing a trust for his mother's estate. Other documents concern potential civil rights claims plaintiff might have regarding the destruction of DNA evidence concerning his criminal conviction. Regardless, he received the documents while incarcerated and had them in his possession for some time. However, between July and September 2012, McConnell Unit officials seized the 31 documents and paperwork, totaling approximately 96 pages. In response, plaintiff began filing I-60 requests to Ms. Collins in the mailroom asking that she forward the materials to his mother.[3] Ms. Collins, together with the Director's Review Committee, denied plaintiff's requests on three separate occasions on the finding that the documents or information therein could be used in "fraudulent schemes."[4]

On March 6, 2013, plaintiff filed a letter with this Court identifying the 31 documents and requesting that the Court enter a show cause order why Ms. Collins should not be liable to plaintiff and his mother for denying the documents. (D.E. 1). The requested documents include UCC-1 forms, financing agreements, and 2012 tax forms, as well as correspondence with the Treasury Department of Puerto Rico. Id.

---

[3] TDCJ-CID policy provides in certain situations that an inmate may elect to have seized property destroyed or sent to a relative or friend. Plaintiff was not afforded this choice with his paperwork.

[4] Plaintiff testified that the McConnell Unit had recently encountered problems with inmates using the mail to conduct fraudulent activities.

During the telephonic hearing, it was often difficult to understand plaintiff's reasoning for the purported legitimate need of these documents.  For example, he explained that he needed the UCC paperwork to establish a collateral interest over his title to his name and himself as debtor.  He further explained that he intended to file these UCC documents "sui juris" as opposed to a corporate entity.  He then continued that he was trying to stand apart from the corporate entity in a bankruptcy proceeding and was trying to displace himself as a citizen of the United States.  It became apparent that he is claiming that officials in Nueces County intentionally destroyed his DNA evidence from his criminal prosecution.  He will use these documents to establish that clean hands have not been used in the process.  Although it is a state entity, he discussed bringing a Federal Torts Claim Act claim against Nueces County.  Then he intended to serve letters rogatory on Nueces County and its Sheriff Department.

On March 21, 2013, plaintiff re-filed his claims on a proper § 1983 form.  Through this action, plaintiff seeks injunctive relief only requesting that defendants be required to release the documents to his mother.

### III.  DISCUSSION

**A.     The Legal Standard For Screening Inmate Civil Rights Actions.**

Regardless of whether a plaintiff has properly exhausted his administrative remedies, his action may be dismissed for failure to state a claim upon which relief can be granted.  42 U.S.C. § 1997e(c)(2).  It is well established that "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); see also Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam).  An action may be dismissed for failure to state a

claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted). The complaint must be liberally construed in favor of the prisoner, and the truth of all pleaded facts must be assumed. Id. (citation omitted).

**B.      Plaintiff's First Amendment Rights Claims Are Without Merit.**

Plaintiff characterizes his claim as a denial of his First Amendment rights involving "freedom of speech, expression, and political beliefs." He argues that, pursuant to the standard set forth in Turner v. Safley, 482 U.S. 78 (1987), he should be permitted to direct disposal of the documents as he sees fit.

**1.      Plaintiff does not have a right to possess financing or other documents.**

In Turner, the Supreme Court has explained that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." Id. at 84. The Court found that restrictions on inmate-to-inmate communications pass constitutional scrutiny only if the restrictions are reasonably related to legitimate and neutral governmental objectives. Id. at 89. Prisoners' constitutional rights may be limited for valid penological objectives, "including deterrence of crime, rehabilitation of prisoners, and institutional security." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citing Pell v. Procunier, 417 U.S , 817, 822-23 (1987); Procunier v. Martinez, 416 U.S. 396, 412 (1974)).

In applying the Turner analysis, the Fifth Circuit evaluates the reasonableness of a practice by considering four factors:

> (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation ... will have on guards and other inmates, and on the allocation of prison resources generally"; and

5

>  (4) whether there are "ready alternatives that could fully accommodate[ ] the prisoner's rights at *de minimis* cost to valid penological interests."

Mayfield v. Tex. Dep't of Criminal Justice, 529 F.3d 599, 607 (5th Cir. 2008) (quoting Turner, 482 U.S. at 89-91). The court in Mayfield explained "that rationality is the controlling factor, and a court need not weigh each factor equally." Id. (citation omitted). Furthermore, our analysis must give due regard to the decisions of prison officials: "'prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations.'" Turner, 482 U.S. at 89 (omission and alteration in original); see also Freeman v. Tex. Dep't of Criminal Justice, 369 F.3d 854, 863 (5th Cir. 2004) ("the Court is equally cognizant of the inherent demands of institutional correction, the deference owed to prison administrators, and the subjugation of individual liberty that lawful incarceration necessarily entails").

In the context of the First Amendment, the Supreme Court has noted that some rights are simply inconsistent with the status of being a prisoner or "with the legitimate penological objectives of the corrections system." Pell, 417 U.S. at 822. For example, in Pell, the Supreme Court sustained the prison's proscriptions of media interviews with individual inmates. Id. at 833-35. The Supreme Court has upheld the prohibitions on the activities of a prisoners' labor union. Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 133 (1977). Indeed in Turner, the Court approved prison systems' restrictions on inmate-to-inmate written correspondence. 482 U.S. at 93. The Supreme Court has held consistently that, because "problems of prisons in America are complex and intractable," and the courts are particularly "ill equipped" to deal with these problems, federal courts generally "defer[] to the judgments of prison officials in upholding [First Amendment] regulations against constitutional challenge."

Shaw v. Murphy, 532 U.S. 223, 229 (2001) (quoting Martinez, 416 U.S. at 404-05); see also Jackson v. Cain, 864 F.2d 1235, 1248 (5th Cir. 1989) ("A prison inmate is entitled to his First Amendment right to freedom of expression so long as it is not inconsistent with his status as a prisoner and does not adversely affect a legitimate state interest.") (citing Pell, 417 U.S at 822; Martinez, 416 U.S. at 413).

In this action, plaintiff acknowledged that the McConnell Unit has recognized a problem with inmates and fraudulent schemes committed through the mail system. Thus, it was not unreasonable that Ms. Collins and the Director's Review Committee were concerned about the nature of the documents in plaintiff's possession: financing documents, security agreements, and UCC-1 filings. Eventually, the McConnell Unit officials made the determination that plaintiff could not have these documents, and it also determined that, due to the nature of the documents, it was not prudent to send them to plaintiff's mother.[5] This is exactly the type of situation in which Turner mandates deterrence to the judgment of the prison officials.

### 2. Plaintiff has failed to establish a denial of access to the courts claim.

To the extent plaintiff claims that denial of the documents constitutes a violation of his right of access to the courts, he fails to state a cognizable claim. Prisoners have a constitutionally protected right of access to the courts. Lewis v. Casey, 518 U.S. 343, 360 (1996) (citing Bounds v. Smith, 430 U.S. 817 (1977)). A prisoner's First Amendment right of access to the courts encompasses nothing more than the ability to prepare and transmit a necessary legal document to a court. Id. at 356. However, this is not a "freestanding right," and the prisoner must demonstrate actual injury resulting from an alleged violation. Chriceol v.

---

[5] Of course, plaintiff's mother (or other family or friends) could readily obtain these various documents, but he explained that he was sending them to her simply for safekeeping so prison officials did not take them from him.

Phillips, 169 F.3d 313, 317 (5th Cir. 1999) (citing Lewis, 518 U.S. at 351-54).  The Supreme Court has explained that "[a]ctual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim."  Lewis, 518 U.S. at 349.

Plaintiff testified that the documents were necessary to establish a trust regarding his mother's estate, and also, to differentiate himself individually versus a corporation.  He suggested that some documents might be used in a future civil lawsuit against the State of Texas or Nueces County.  He fails to allege, let alone prove, that he has been prejudiced in *any pending* litigation as a consequence of being denied the documents.  Accordingly, plaintiff fails to state a claim for denial of access to the courts.

### 3. Plaintiff does not have a right to privacy.

Prisoners do not have a protected liberty interest in their privacy pursuant to the Fourth Amendment.  Hudson v. Palmer, 468 U.S. 517, 527-28 (1984) ("a right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order").  Similarly, inmates do not have a Fourteenth Amendment privacy right.  Oliver, 276 F.3d at 744-45.  Even regulations that impinge upon a prisoner's rights with respect to mail are constitutionally permissible so long as the practice is reasonably related to a legitimate penological interest.  Brewer v. Wilkinson, 3 F.3d 816, 825-26 (5th Cir. 1993).

Accordingly, because the TDCJ has reviewed and offered plaintiff a plausible explanation for the denial of his document request, plaintiff has no right of privacy claim concerning the documentation.

### C. Plaintiff's Claim That Defendants Failed To Follow TDCJ-CID Policy Is Without Merit.

Finally, plaintiff contends that defendants violated TDCJ-CID policy that allows offenders to dispose of seized property by directing that it be destroyed or sent off the Unit. However, even if that policy applied to the documentation at issue and defendants did fail to follow TDCJ-CID policy, without more, there is no constitutional violation. Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996) (per curiam). Accordingly, this claim is without merit.

### IV. CONCLUSION

For the reasons stated above, plaintiff's claims are dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A(b)(1).

ORDERED this 23rd day of April 2013.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE